State, Pope, pros., v. Town of Union.

---

THE STATE, JAMES POPE, PROSECUTOR, v. THE TOWN OF UNION, IN THE COUNTY OF HUDSON.

1. *Held*—that where the law requires a specified application to be made and advertised before an ordinance can be passed, it must appear on the face of the ordinance itself, or in the official record of the proceedings, that such application was duly made and advertised, otherwise the ordinance will be set aside.

2. *Held*—that the tenth section of the supplement to the act incorporating the town of Union, alters the preliminary assessment required by the twenty-fourth section of the original act, as well as the final assessment required by the twenty-fifth section.

3. The proceedings should show that the commissioners were of the character required by the law.

---

The *certiorari* in this case brought up an ordinance of the town of Union, to provide for the improvement of Gardner and Durham streets, and an assessment against the prosecutor and others, to defray the expense. The reasons as-

signed for setting aside the proceedings were argued before Justices ELMER, BEDLE, and DALRIMPLE, by *Mr. Lyons,* for the prosecutor, and by *Mr. Abbett,* for the authorities of the town.

The opinion of the court was delivered by

ELMER, J.   It being properly admitted by the counsel for the town, that the assessment cannot be supported, we are called upon to consider only the reasons urged for setting aside the original ordinance, adopted by the board of councilmen May 9th, 1866.   The act incorporating this town was approved in 1864, (*Acts, p.* 561,) and there was a supplement thereto, approved March 20th, 1866, (*Acts, p.* 521,) which took effect immediately.   It is a general rule, applicable to all special powers conferred on municipal and other corporations, affecting the property of individuals, that such powers must be strictly pursued ; and, unfortunately, it is so common for the officers entrusted with the execution of them to misapprehend or disregard the law under which they profess to act, that the courts are obliged to exercise great vigilance to prevent gross injustice.

The first objection urged against the ordinance in question was, that there was no such application for the contemplated improvement as the law requires.   The twenty-fourth section authorizes the board of councilmen, by ordinance, to lay out, grade, &c., any street, "on the application in writing to the said board of councilmen by some of the owners of the lands over which such improvements shall pass," and requires this application to be advertised in a manner prescribed, before the ordinance is passed.   The clerk is required by the tenth section to record the proceedings of the councilmen, and to engross all the ordinances in a book, which book shall be deemed a public record, and each ordinance shall be signed by the president and clerk.   Neither the ordinance as engrossed, nor the record of the proceedings at or before the final passage of the ordinance, take any notice of an application, or of the advertisement thereof. Without meaning to intimate any opinion as to the effect or

the proof of such an ordinance, when offered in court upon a collateral proceeding, I am clear, that when such proceedings are brought directly before us, we ought to declare the ordinance illegal and set it aside. *Carron* v. *Martin*, 2 *Dutcher* 595; *Chosen Freeholders* v. *The State*, 4 *Zab.* 719; *The State* v. *Jersey City*, 1 *Dutcher* 309; *The State* v. *Newark*, 1 *Dutcher* 400.

Upon examining the original application now produced, it purports to be signed by several persons, who call themselves "property holders," and not "property owners." A property holder may be a mere tenant. It appears by the testimony now presented, that one of these applicants was a property owner; but this is not sufficient; the act requiring it to be made by some of the owners—in the plural.

A second objection to the ordinance was, that it does not appear, upon the face of the proceedings, that the commissioners appointed to ascertain and assess the expense of the improvement possessed the qualifications required by the law. This was held a fatal defect in *The State* v. *Jersey City*, 1 *Dutcher* 309.

Another objection to the ordinance, and, in my opinion, the most important one urged, was that it directs an assessment to be made, differing from that required by the tenth section of the supplement. The twenty-fourth section of the act of 1864, directs that the council shall appoint three discreet, impartial, and disinterested persons, residents and freeholders in said town, commissioners to examine and cause a survey and map to be made, and who shall estimate the whole cost of said improvement, and shall assess the same upon the said lands fronting upon said improvements, and report the names of the owners of the lots or parcels, so far as practicable, with the amount assessed to each. The report being filed, and notice of it published, it is provided, that unless within thirty days the owners of two thirds of the lands to be assessed shall file a remonstrance, said councilmen shall proceed to execute such improvement. The twenty-fifth section directs, that the actual expenses, when

the same shall be completed, shall be assessed by the three commissioners upon the lands, and paid by the owners of the lands and real estate fronting upon the improvement, in proportion to the benefit received by said lands and real estate. The tenth section of the supplement enacts that all improvements shall be assessed upon and paid by the lands and property benefited thereby, in proportion to the benefit received, anything in the act to which it is a supplement to the contrary notwithstanding.

Acting, it would seem, and as counsel now insist correctly, upon the understanding that the preliminary assessment directed by the twenty-fourth section, is not affected by the supplement, the ordinance directs that the commissioners named shall act according to numbers twenty-four and twenty-five of the charter, and assess the land fronting on said street, according to the provisions of said charter, and also all lands benefited by said improvements. A separate section of the ordinance provides that the costs shall be assessed and paid by the real estate benefited. In my opinion, the supplement, by necessary implication, changes the preliminary, as well as the final assessment. The obvious purpose of the preliminary assessment is, to apprise the property owners of the probable expense that will be incurred by them if the improvement is carried into effect, that they may thereby be enabled to judge whether it is expedient to remonstrate—a purpose which will be entirely frustrated; unless the original and final assessment are made upon the same principle. This consideration renders it highly important that the ordinance shall, in explicit and unmistakable terms, require the preliminary, as well as the final assessment, to be made as the supplement directs, without reference to the frontage of the lots, and makes it the duty of the council to see that it was fairly and properly made, so as to include all the lands and real estate in the town that may be more or less benefited, before they attempt to make the improvement contemplated. Any other principle of assessment would be manifestly illegal and un-

just, and even if in terms authorized by the charter might be considered as in conflict with our state constitution.

In my opinion, the ordinance and all the proceedings under it must be set aside.

CITED in *State* v. *Mayor, &c., of Jersey City*, 6 *Vroom* 381.